UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DFSB KOLLECTIVE CO., LTD. and others,<br><br>Plaintiffs,<br><br>v.<br><br>BING YANG, INDRAWATI YANG, and others,<br><br>Defendants. | Case No. 11-cv-01051 CW (NC)<br><br>**REPORT AND RECOMMENDATION TO DENY MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>Re: Dkt. Nos. 28, 32 |

Plaintiffs move for the entry of default judgment under Federal Rule of Civil Procedure 55(b)(2) against defendants Bing Yang and Indrawati Yang for operating interactive websites hosted by California residents from which users can access without permission plaintiffs' copyrighted songs and related artwork.  Because plaintiffs have failed to show that Bing Yang and Indrawati Yang, who are residents of Vietnam and Indonesia respectively, purposefully directed their conduct at California, the court recommends that the district court deny plaintiffs' motion and that it dismiss this action for lack of personal jurisdiction and improper venue.

//

# I. BACKGROUND

## A. The parties

Plaintiff DFSB Kollective Co. is a Korean corporation that has the right to protect and enforce the musical-recording copyrights owned by plaintiffs Nega Network, Jungle Entertainment, Foundation Records, Woolim Entertainment, Aftermoon Music Entertainment, Inc., Paragon Music Corp., Roxta Music, and Spot/Monky Global. Am. Comp. ¶¶ 1, 7, Dkt. No. 16. All of the plaintiffs are Korean corporations based in Korea. *Id.* ¶ 2. The copyrights owned by plaintiffs were issued by the United States Copyright Office and cover various Korean pop songs and their corresponding album artwork. *Id.* ¶¶ 7, 16; Ex. A, copyright registrations.

Defendant Bing Yang is an individual who resides in Vietnam and uses the following aliases on various social networking and video sites on the internet: "Kpop Explorer," "Bingyang," "Bingyang.co.cc," and "Bingyang1411." *Id.* ¶¶ 20, 25. Bing Yang allegedly "conducts business" through websites kpopexplorer.wordpress.com and bingyang.co.cc. *Id.*

Defendant Indrawati Yang is an individual who resides in Indonesia and uses the following aliases on various social networking and video sites on the internet: "Asian Loud," "Korean Wave," "Clarrie," "Koreanmusicfans," "joehanny," "Kpopsounds88," and "Kpop Sounds." *Id.* ¶¶ 21, 25. Indrawati Yang allegedly "conducts business" through websites www.asianloud.co.cc, www.asianloud.net, kpopsounds.blogspot.com, koreanmusicdownload.blogspot.com, koreanmusicwave.blogspot.com, koreanmusicdownload.blogspot.com, koreanmusicwave.blogspot.com, and kpopsounds.blog127.fc2.com. *Id.*

## B. Allegations in the operative complaint

Plaintiffs claim that defendants Bing Yang and Indrawati Yang collect, index, and post on their websites links to material available on third-party websites that allegedly infringes plaintiffs' copyrights. *Id.* ¶ 3. The purpose of this unauthorized activity allegedly is to "disseminate" infringing content to "internet users" who otherwise would not be able to access such content. *Id.* ¶¶ 23-24. When an internet user clicks on one of the links on defendants' websites, the user is directed to a third-party website where he can download plaintiffs' copyrighted music and

artwork. *Id.* ¶ 27. Plaintiffs believe that defendants have uploaded plaintiffs' copyrighted works to these third-party websites. *Id.* The websites on which defendants post infringing material are "often hosted on servers located outside of the United States." *Id.* ¶ 24. Defendants allegedly profit from their activity by displaying advertisings next to the infringing material. *Id.* ¶ 3. Plaintiffs claim that defendants' activities are willful and "cause substantial damage" to plaintiffs and the music industry. *Id.* ¶ 1.

Plaintiffs assert three causes of action against defendants, all of which arise out of the Copyright Act, 17 U.S.C. §§ 101-810: (1) willful copyright infringement, (2) contributory copyright infringement, and (3) inducement of copyright infringement. *Id.* ¶ 4.

Plaintiffs allege that the court has personal jurisdiction over defendants because (1) defendants or their agents "are doing business in this district"; and (2) "a substantial part of the wrongful acts committed by defendants occurred in interstate commerce in the state of California and the Northern District of California." *Id.* ¶ 6. Plaintiffs also allege that venue in the Northern District of California is proper under 28 U.S.C. §§ 1391(b) and 1400(a), because the events giving rise to plaintiffs' claims occurred within this district. *Id.*

Plaintiffs claim to have provided defendants with several notices of infringement "through third-party services" on which defendants maintain accounts. *Id.* ¶ 30.

Plaintiffs served process on defendants via email on January 6, 2012, after District Judge Wilken granted plaintiffs' request to effectuate service in this manner. Dkt. Nos. 19, 23, 24. Defendants have not responded to the complaint. The clerk entered default as to each of the defendants on February 16, 2012. Dkt. No. 26.

**C.     Motion for default judgment**

Plaintiffs now move for the entry of default judgment against defendants under Federal Rule of Civil Procedure 55(b). Mot., Dkt. No. 28. Plaintiffs request an award of $315,000 in statutory damages against Bing Yang, an award of $900,000 in statutory damages against Indrawati Yang, interest under 28 U.S.C. § 1961(a), and a permanent injunction barring defendants from further infringing plaintiffs' copyrights. Plaintiffs served this motion on defendants on March 23, 2012. *Id.* at 50-51. The motion was referred to this court for a report

Case No. 11-cv-01051 CW (NC)
REPORT AND RECOMMENDATION                  3

and recommendation. Dkt. No. 29.

**D.     Order to show cause regarding personal jurisdiction**

The court ordered plaintiffs to show cause why it should not recommend to the district court that this action be dismissed for lack of personal jurisdiction and improper venue. Dkt. No. 46. In that order, the court noted that the allegations in the complaint with respect to personal jurisdiction are conclusory and do not show that defendants' acts were expressly aimed at California such that the court could find that defendants invoked the benefits and protections of the laws of California.

In their response to the order to show cause, plaintiffs argue that the court may exercise specific personal jurisdiction over defendants because defendants purposefully availed themselves of the benefits and protections of California law by (1) intentionally operating commercial, highly interactive websites that are "hosted specifically in California"; and (2) using and relying upon the services of various California companies such as Google, Live Journal, Automattic, Facebook, PayPal, Linkbucks, Twitter, YouTube, and 4shared.com to "facilitate copyright infringement" and to direct internet users to their websites. Resp. to OSC at 4, Dkt. No. 32.

## II. LEGAL STANDARD

"[D]efault judgments are generally disfavored. Whenever it is reasonably possible, cases should be decided upon their merits." *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). After the clerk enters a defendant's default, a court must take "the well-pleaded factual allegations" in the complaint "as true." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). The defendant, however, "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id*.

In determining whether to enter a default judgment, a court "may dismiss an action sua sponte for lack of personal jurisdiction," because a "judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). The court, however, must provide to the plaintiff the opportunity to assert facts to establish that the exercise of personal jurisdiction over a nonresident defendant is proper before dismissing an action for lack of personal jurisdiction. *Id.*

Case No. 11-cv-01051 CW (NC)
REPORT AND RECOMMENDATION                4

## III. DISCUSSION

In determining whether the exercise of personal jurisdiction over a nonresident defendant is proper, a district court must apply the law of the state in which it sits where, as here, there is no applicable federal statute governing personal jurisdiction. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). District courts in California may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the Due Process Clause of the Constitution. CAL. CODE CIV. P. § 410.10. The Due Process Clause requires that the defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted). Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction.

The party seeking to invoke jurisdiction has the burden of establishing that jurisdiction is proper. *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984). That party, however, need only make a prima facie showing of jurisdictional facts when the court did not conduct an evidentiary hearing regarding personal jurisdiction. *Fiore v. Walden*, 657 F.3d 838, 846 (9th Cir. 2011) (citation omitted). In considering whether personal jurisdiction is proper, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citation and internal quotation marks omitted). Additionally, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Fiore*, 657 F.3d at 846-47 (citation omitted). "[L]itigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state." *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993) (citation omitted).

**A.    The court may not exercise general jurisdiction over defendants**

General jurisdiction exists when a nonresident defendant is domiciled in the forum state or his activities in the forum are "substantial" or "continuous and systematic." *Panavision*, 141 F.3d at 1320. To determine whether a nonresident defendant's contacts are sufficiently substantial or continuous and systematic, a court must consider their "longevity, continuity, volume, economic

impact, physical presence, and integration into the state's regulatory or economic markets." *Mavrix*, 647 F.3d at 1224 (citations and internal quotation marks omitted).

Here, plaintiffs do not contend that the court has general personal jurisdiction over defendants and allege no facts to establish that defendants' contacts with California are substantial or continuous and systematic. Accordingly, the exercise of general personal jurisdiction over defendants is unjustified.

**B.     The court may not exercise specific personal jurisdiction over defendants**

When the nonresident defendant's contacts with the forum are insufficiently pervasive to subject him to general personal jurisdiction, the court must ask whether the "nature and quality" of his contacts are sufficient to exercise specific personal jurisdiction over him. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). A court may exercise specific personal jurisdiction over a nonresident defendant if (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

The plaintiff bears the burden of satisfying the first two of these three elements; if the plaintiff fails to establish either of them, specific personal jurisdiction over the nonresident defendant is improper. *Id.* (citations omitted). If the plaintiff satisfies the first two elements, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* (citations and internal quotation marks omitted).

Here, plaintiffs allege that the court may exercise specific personal jurisdiction over defendants. As will be shown below, however, the exercise of specific personal jurisdiction over defendants is unjustified, as plaintiffs have failed to satisfy the first element of the Ninth Circuit's test for specific personal jurisdiction under the *Calder* effects test. That is, plaintiffs have failed to show that defendants purposefully directed their activities at California. *Schwarzenegger*, 374 F.3d at 802.

### 1. Purposeful direction under *Calder*

To satisfy the first prong of the specific jurisdiction test, plaintiffs must show that defendants either purposefully directed their activities at California, or purposefully availed themselves of the privilege of conducting activities in California. In cases in which tortious conduct is alleged by the plaintiff, the Ninth Circuit requires that the actions of the nonresident defendant be purposefully directed at the forum based on an "effects test that focuses on the forum in which the defendant's actions were felt, whether or not the actions occurred within the forum." *Mavrix*, 647 F.3d at 1228 (citations and internal quotation marks omitted). This "effects test," which is based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), requires that the nonresident defendant (1) commit an intentional act, (2) that was expressly aimed at the forum state, and (3) that caused harm that the nonresident defendant knew would likely be suffered in the forum state. *Id.* Unless the plaintiff establishes all three of the *Calder* elements, the purposeful-direction element is unsatisfied.

Here, the *Calder* effects test is the proper framework for analyzing the exercise of specific personal jurisdiction over defendants, because plaintiffs allege copyright infringement, which is a tort-like cause of action. *See Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1128 (9th Cir. 2010) (finding that that the *Calder* effects test is the proper framework for analyzing a claim for willful copyright infringement because it is akin to an intentional tort). Plaintiffs, however, fail to establish the second and third of the *Calder* elements, and therefore, they fail to establish purposeful direction.

#### a. Intentional act

The first element of the *Calder* effects test is satisfied here, because defendants acted intentionally in operating websites containing links to material that allegedly infringes plaintiffs' copyrights. Am. Compl. ¶¶ 1-3.

#### b. Express aiming

Defendants' alleged conduct does not meet the second element of the *Calder* effects test, however, as plaintiffs have not shown that defendants' activities were expressly aimed at California.

Case No. 11-cv-01051 CW (NC)
REPORT AND RECOMMENDATION            7

The express-aiming element is met when the nonresident defendant's conduct "directly target[s] the forum." *Mavrix*, 647 F.3d at 1229-30. The Ninth Circuit held in *Mavrix* that, in the context of copyright infringement claims based on a publication on a website, express aiming is found when the website contains material that is directed specifically at the forum's residents and the forum's audience is an "integral component" of the defendant's "business model" and "profitability." *Id.* at 1230. The facts in *Mavrix* show the nature and extent of the contacts required for a finding of express aiming. The defendant had posted on his website plaintiff's copyrighted photos without authorization. The website had a "national audience, not restricted to California," and it was interactive, as it allowed users to post comments, receive email newsletters, vote in polls, and upload content. *Id.* at 1222. The Ninth Circuit found that the express-aiming element was satisfied because the advertisements on the website were "directed to" the forum's residents for commercial gain, which showed that the defendant knew, either actually or constructively, that forum residents used the website. *Id.* at 1230. Because the forum's audience was "an integral component of [the defendant's] business model and its profitability," the Ninth Circuit held that "it does not violate due process to hold [the defendant] answerable in a [forum] court for the contents of a website whose economic value turns, in significant measure, on its appeal to [forum residents]." *Id.*

Here, plaintiffs have not shown that a California audience is an integral component of defendants' business model and profitability or that the economic value of defendants' websites depends in any way on their appeal to California residents. Plaintiffs state conclusorily that defendants "acted affirmatively to conduct their business in California" because (1) defendants "operated multiple commercial, highly interactive websites, hosted specifically in California through Blogger, Wordpress, or Livejournal to infringe" plaintiffs' works; (2) defendants' websites "target[ed] California residents indiscriminately"; (3) defendants "profited from internet traffic through advertising displayed on their respective accounts"; and (4) defendants use California companies Google, Automattic, LiveJournal, Facebook, PayPal, Linkbucks, Twitter, Youtube, and 4shared.com "to facilitate copyright infringement and direct internet users to their websites as well as to post infringing videos, artwork, and links to unauthorized downloads."

Case No. 11-cv-01051 CW (NC)
REPORT AND RECOMMENDATION                   8

Resp. to OSC at 4. These conclusory allegations lack facts showing the specific and affirmative actions that defendants allegedly took to target California internet users for commercial gain, or the role, if any, that California residents played in defendants' business model. Without such facts, the court cannot conclude that defendants expressly aimed their conduct at California.

Plaintiffs argue that the high level of interactivity of defendants' websites is sufficient to subject defendants to lawsuits in California, but this argument is fallacious. The website at issue in *Mavrix* likewise was highly interactive, as it allowed users to post comments and upload pictures. But the level of interactivity of the website was not the factor that determined whether the exercise of specific personal jurisdiction over the nonresident defendant was proper; as discussed above, that factor was the defendant's continuous, deliberate, and unambiguous exploitation for commercial gain of the forum's market. *See Mavrix*, 647 F.3d at 1229 ("In this case, we find most salient the fact that [the defendant] used [the plaintiff's] copyrighted photos as part of its exploitation of the [forum's] market for its own commercial gain."). Such exploitation is not evident here.

Plaintiffs unpersuasively cite *Cybersell, Inc. v. Cybersell, Inc*. in support of their interactivity argument. 130 F.3d 414 (9th Cir. 1997). In *Cybersell*, the Ninth Circuit held that the district court could not exercise specific personal jurisdiction over a nonresident defendant who operated a passive website because (1) the defendant "did nothing to encourage people in [the forum] to access its site"; and (2) there was "no evidence that any part of [the defendant's] business (let alone a continuous part of its business) was sought or achieved in" the forum. *Id.* at 419. Because the express aiming inquiry in *Cybersell* turned on the degree of commercial solicitation performed by the defendant with respect to the forum's residents, this court cannot conclude that specific personal jurisdiction may be exercised over defendants here merely because defendants' websites are significantly more interactive than the one at issue in *Cybersell*. *Cybersell* requires the court to evaluate whether any aspect of defendants' conduct, including the interactivity level of their websites, was tailored to commercially exploit California residents. As discussed above, however, plaintiffs have alleged no facts to establish that defendants' conduct was in any way tailored to commercially exploit California residents.

Case No. 11-cv-01051 CW (NC)
REPORT AND RECOMMENDATION                9

Plaintiffs also argue that defendants are subject to suit in California because their websites were "hosted specifically in California" by California companies and defendants used various California companies to promote their websites. Plaintiffs cite no authority to support this argument, and the court is unaware of any such authority. At best, this argument suggests that defendants' conduct was *enabled by* residents of California, but the appropriate inquiry under the express-aiming element is whether defendants' conduct was *directed to* residents of California. Moreover, if the express-aiming requirement could be met simply by operating a website hosted or promoted by a California company, then a significant portion of the world's population would be subject to specific personal jurisdiction in California, as a significant portion of the world's websites are hosted by California companies. Accordingly, specific personal jurisdiction cannot be exercised over defendants on this basis.

Courts in this district have applied the *Calder* effects test in the context of motions for default judgment involving a nonresident defendant's alleged publication of infringing content on an interactive website, and the vast majority have held that the express-aiming element requires allegations showing the defendant's actual or intended commercial exploitation of California residents. Specifically, these courts found that the express-aiming element was satisfied when the defendant allegedly used the website to sell or advertise goods or services to California residents or to compete for plaintiff's customers in California. *See, e.g.*, *BMW of North Am., LLC v. DinoDirect Corp.*, No. 11-cv-04598 WHA, 2012 WL 2501067, at *4 (N.D. Cal. Jun. 27, 2012) (finding express aiming because defendant allegedly sold infringing products to California residents); *Sanrio, Inc. v. Jay Yoon*, No. 10-cv-05930 EJD, 2012 WL 610451, at *2-3 (N.D. Cal. Feb. 24, 2012) (same); *Yogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*, 11-cv-00592 JCS, 2011 WL 6291793, at *8 (N.D. Cal. Oct. 25, 2011) (finding express aiming because defendant advertised its services to California residents and competed for plaintiffs' customers in California); *eAdGear, Inc. v. Liu*, 11-cv-05398 JCS, 2012 WL 2367805, at *6-7 (N.D. Cal. Jun. 21, 2012) (same). These cases support this court's finding that, without allegations showing that defendants commercially exploited California residents, the express-aiming element is not met.

//

Although one court in this district has held that the express-aiming element can be satisfied by allegations similar to the ones plaintiffs make here, that court's holding is unsupported by the Ninth Circuit's application of the *Calder* test to internet publications by nonresident defendants. In *DFSB Kollective Co., Ltd. v. Tran*, the court found that the nonresident defendant had expressly aimed his conduct at California because the plaintiffs alleged that he operated highly interactive websites containing links to infringing content and that he used several California companies to promote the websites. No. 11-cv-01049 LHK, 2011 WL 6730678, at *3 (N.D. Cal. Dec. 21, 2011). This holding runs afoul of the Ninth's Circuit holdings in *Cybersell* and *Mavrix*, because it condones the exercise of personal jurisdiction over a nonresident defendant without a finding that the defendant's activities were intended to commercially exploit California residents. *See Cybersell*, 130 F.3d. at 419 ("[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of *commercial activity* that an entity conducts over the Internet.") (emphasis added); *Mavrix*, 647 F.3d at 1231 (finding express aiming because the defendant "continuously and deliberately exploited the California market for its website") (internal quotation marks omitted).

The *Tran* court does not explain why the defendant's alleged use of California companies to promote his websites is relevant to the question of whether the defendant's websites were sufficiently commercial and exploitative of the California market. It also does not justify its expansive view of personal jurisdiction. For these reasons, and because at least one court in this district has disagreed with the *Tran* court's express-aiming analysis, this court finds *Tran* to be unpersuasive and declines to follow it. *See DFSB Kollective Co. Ltd. v. Bourne*, No. 11-cv-01046 PJH (JSC), 2012 WL 2376209, at *8 (N.D. Cal. Jun. 22, 2012) ("[T]his Court disagrees that using the Internet accounts of companies based in California is sufficient to support a finding that a defendant expressly aimed his conduct at California.") (report and recommendation not yet reviewed by district court).

### c. Harm

Defendants' conduct also does not meet the third element of the *Calder* test, which requires a showing that defendants' conduct cause harm "the brunt of which is suffered—and

which the defendant knows is likely to be suffered—in the forum state." *Panavision Int'l., L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (citation omitted). Plaintiffs argue that "defendants knew or should have known that their intentional acts would cause harm to California residents, given that their accounts targeted internet users around the world indiscriminately." Resp. to OSC at 5. This argument is unconvincing, as it lacks facts showing that *the brunt* of the harm caused by defendants' alleged infringement of plaintiffs' copyrights was felt in California. *See Mavrix*, 647 F.3d at 1231 ("In order to establish specific jurisdiction, a plaintiff must also show that jurisdictionally significant harm was suffered in the forum state."). The Ninth Circuit has held that although "a corporation does not suffer harm in a particular geographic location like an individual does . . . this does not preclude a determination that a corporation suffers the brunt of the harm in its principal place of business." *Panavision*, 141 F.3d at 1322 n.2. Here, plaintiffs are Korean companies based in Korea, which suggests that the brunt of the harm they suffered was felt in Korea. Am. Compl. ¶ 2. As plaintiffs do not allege facts showing that defendants caused harm the brunt of which they knew would likely be suffered in California, the harm element is not met.

### 2. Forum-Related Activities and Reasonableness

Because plaintiffs have failed to establish the first element of the test for specific personal jurisdiction, the Court need not inquire into whether plaintiffs have met the second or third elements of that test, which require respectively that plaintiffs' claims arise out of the forum-related activities of defendants, and that the exercise of jurisdiction over defendants be reasonable.

## C. Venue in this district is improper

In actions for copyright infringement, venue is governed by 28 U.S.C. § 1400(a), which provides that such actions "may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). The Ninth Circuit has interpreted § 1400(a) to mean that venue "is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997) (overruled on other

Case No. 11-cv-01051 CW (NC)
REPORT AND RECOMMENDATION                    12

Case 4:11-cv-01051-CW   Document 34   Filed 07/18/12   Page 13 of 13

grounds). Because defendants are not amenable to personal jurisdiction in California, as discussed above, venue in this district is improper.

## IV. CONCLUSION

Because plaintiffs have failed to show that defendants expressly aimed their conduct at California, and that defendants caused harm the brunt of which they knew would likely be suffered in California, the district court lacks personal jurisdiction over defendants. Accordingly, the court recommends that the district court DENY plaintiffs' motion for default judgment and that it DISMISS this action for lack of personal jurisdiction and improper venue. Plaintiffs may file objections to this report and recommendation under Federal Rule of Civil Procedure 72(a) within fourteen days of the date this order is filed.

IT IS SO ORDERED.

Date: July 18, 2012

Nathanael M. Cousins
United States Magistrate Judge

Case No. 11-cv-01051 CW (NC)
REPORT AND RECOMMENDATION     13