IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DFSB KOLLECTIVE CO., LTD.; NEGA NETWORK; JUNGLE ENTERTAINMENT; FOUNDATION RECORDS; WOOLIM ENTERTAINMENT; AFTERMOON MUSIC ENTERTAINMENT, INC.; PARAGON MUSIC CORP.; ROXTA MUSIC; and SPOT/MONKY GLOBAL, | No. C 11-1051 CW<br><br>ORDER DECLINING TO ADOPT MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Docket No. 34) AND GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT (Docket No. 28) |
| Plaintiffs, | |
| v. | |
| BING YANG; INDRAWATI YANG; and JOHN DOES 3-10, | |
| Defendants. | |
| _____/ | |

Plaintiffs DFSB Kollective Co. Ltd., Nega Network, Jungle Entertainment, Foundation Records, Woolim Entertainment, Afternoon Music Entertainment, Paragon Music Corp., Roxta Music and Spot/Monky Global moved for default judgment on their claims against Defendants Bing Yang and Indrawati Yang.  The motion was referred to a Magistrate Judge, who issued an order to show cause why the case should not be dismissed for lack of personal jurisdiction and improper venue.  After receiving their response, the Magistrate Judge recommended dismissing the case for lack of personal jurisdiction and improper venue.  Plaintiffs object to his report and recommendation.  Having considered the papers filed by Plaintiffs, the Court declines to adopt the Magistrate Judge's recommendation and grants Plaintiffs' motion for default judgment.

United States District Court
For the Northern District of California

BACKGROUND

I.   Facts

The following allegations were made in Plaintiffs' First Amended Complaint (1AC).

Plaintiff DFSB Kollective Co. Ltd. is a Korean corporation that has the right to promote, protect and enforce the musical-recording copyrights owned by Plaintiffs Nega Network, Jungle Entertainment, Foundation Records, Woolim Entertainment, Afternoon Music Entertainment, Paragon Music Corp., Roxta Music and Spot/Monky Global.  1AC ¶¶ 7-15.  Each Plaintiff is a Korean corporation based in Seoul, Korea.  Id.  The copyrights owned by Plaintiffs were issued by the United States Copyright Office and cover various Korean pop songs and their corresponding album artwork.  Id. at ¶¶ 7, 16 & Ex. A.

Defendant Bing Yang is an individual who is a resident of Vietnam and uses the following aliases on various websites: Kpop Explorer, Bingyang, Bingyang.co.cc and Bingyang1411.  Id. at ¶ 20. Bing Yang "conducts business" through websites located at kpopexplorer.wordpress.com and bingyang.co.cc.  Id.  Bing Yang also uses the name "Kpop Explorer" on the online blogging site Wordpress and the names "Bingyang," "Bingyang.co.cc" and "Bingyang1411" on various web lockers or third-party storage sites.  Id.

Defendant Indrawati Yang is an individual who is a resident of Indonesia and uses the following aliases on various websites: Asian Loud, Korean Wave, Clarrie, Koreanmusicfans, joehanny and Kpopsounds.  Id. at ¶ 21.  Indrawati Yang "conducts business" through websites located at www.asianloud.co.cc,

United States District Court
For the Northern District of California

2

United States District Court
For the Northern District of California

1  www.asianloud.net, kpopsounds.blogspot.com,

2  koreanmusicdownload.blogspot.com, koreanmusicswave.blogspot.com,

3  koreanmusicswave.blogspot.com/2010/04/freeq-free-4-all.html and

4  kpopsounds.blog127.fc2.com.  Id.  Indrawati Yang also uses the

5  names "Asian Loud" on the social networking site Facebook, "Korean

6  Wave" and "Clarrie" on the online blogging site Blogger,

7  "Koreanmusicfans" on the online payment processing site PayPal,

8  "joehanny" on the online advertisement site Linkbucks, file

9  sharing site Mediafire and social networking site Twitter,

10  "Kpopsounds88" on the online video community YouTube and "Kpop

11  Sounds" on the online blogging site FC2.  Id.

12      Using the aliases identified above and others, Defendants

13  search for, collect, index and post on their websites links to

14  content available on third-party websites, which include material

15  that infringes on Plaintiffs' copyrights.  Id. at ¶ 3.  Plaintiffs

16  allege that Defendants' websites provide to "Internet users" links

17  to material that would otherwise be inaccessible to them and that,

18  by compiling and indexing the links to the infringing content,

19  Defendants make the infringing content "easily accessible to

20  users."  Id. at ¶ 24.  In addition to links, Defendants' websites

21  contain images of the copyrighted artwork that is associated with

22  Plaintiffs' albums, in order to enhance the "user interface" on

23  the websites.  Id. at ¶¶ 23, 25.

24      To download or listen to a Plaintiffs' copyrighted material

25  using Defendants' website, an internet user clicks on a link,

26  which is next to an image of the cover associated with the

27  relevant album.  Id. at ¶ 26.  When an internet user clicks on the

28  link, the user is directed to a third party website where the user

"may be given the option to download all or part of the album."
Id. at ¶ 27.   Plaintiffs allege that Defendants themselves have
uploaded Plaintiffs' copyrighted work to the third party websites.
Id.   These third party websites are "often hosted on servers
located outside the United States."   Id. at ¶ 24.

Defendants derive revenue by displaying advertisements on
their websites.   Id. at ¶ 26.   "The listings of albums for which
links are offered are surrounded by advertisements."   Id.
Advertisers pay to be included in advertising on Defendants'
websites, either "directly or through advertising brokers such as
Google."   Id.

Plaintiffs allege that "Defendants have acted in willful
disregard of laws protecting" their copyrights and that this has
caused "substantial damage to the value of their creative works."
Id. at ¶ 31.   Plaintiffs assert claims against Defendants for
copyright infringement, contributory copyright infringement and
inducing copyright infringement.   Id. at ¶ 4.

Plaintiffs allege that this Court has personal jurisdiction
over Defendants "because, among other things, (a) each of the
Defendants or their respective agents are doing business in this
District; and (b) the DFSB Plaintiffs are informed and believe,
and upon that basis allege, that a substantial part of the
wrongful acts committed by Defendants has occurred in interstate
commerce in the State of California and Northern District of
California."   Id. at ¶ 6.   They also allege that venue is
appropriate here because the "events giving rise to the claims
alleged herein occurred, among other places, within this judicial
district."   Id.

II.   Procedural history

     Plaintiffs filed this action on March 7, 2011.  Docket No. 1.
After the Court granted permission to serve Defendants by email,
Plaintiffs completed service in this manner on January 6, 2012.
Docket Nos. 19, 23, 24.

     Defendants have not appeared or filed an answer to the 1AC.
On February 16, 2012, the Clerk entered default as to both
Defendants.  Docket No. 26.

     On March 23, 2012, Plaintiffs filed the instant motion for
default judgment.  Docket No. 28.  The motion was referred to a
Magistrate Judge for a report and recommendation.  Docket Nos. 29,
30.

     On May 21, the Magistrate Judge issued an order to show cause
why he should not recommend that the case be dismissed for lack of
personal jurisdiction and improper venue.  Docket No. 31.

     On June 4, 2012, Plaintiffs responded to the order to show
cause.  Docket No. 32.

     On July 18, 2012, the Magistrate Judge issued a report and
recommendation, recommending that the Court dismiss the complaint
for lack of personal jurisdiction and improper venue and deny the
motion for default judgment.  Docket No. 34.

     On August 1, 2012, Plaintiffs filed an objection to the
report and recommendation.  Docket No. 36.  They also request that
the Court take judicial notice of a declaration that Bernie Cho,
the President of DFSB, filed in a similar case in this district.
Docket No. 37.  The Court grants this request and takes judicial
notice of the Cho Declaration, but not of the truth of the facts
asserted therein.

**United States District Court**
For the Northern District of California

LEGAL STANDARD

When a party files a timely objection to a magistrate judge's report and recommendation, the district court must "make a de novo determination of those portions of the report or specified . . . recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(c); see also Fed. R. Civ. P. 72(b)(3).

DISCUSSION

I.   Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).

A. Subject Matter Jurisdiction

Plaintiffs bring claims against Defendants for copyright infringement in violation of 17 U.S.C. § 501, contributory copyright infringement and inducement of copyright infringement. The Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. sections 1331 and 1338.

B. Personal Jurisdiction

"The party seeking to invoke jurisdiction has the burden of establishing that jurisdiction exists." Flynt Distributing Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984). Where the court does not conduct an evidentiary hearing regarding personal jurisdiction, "the plaintiff need make only a prima facie showing of jurisdictional facts." Id. To satisfy this burden, the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (internal quotation marks and citation omitted). The court may not assume the truth of such allegations if they are contradicted by affidavit. Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977). However, factual disputes are resolved in the plaintiff's favor. Mavrix Photo, 647 F.3d at 1223 (citing Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).

There are two independent limitations on a court's power to exercise personal jurisdiction over a non-resident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). Because California's jurisdictional statute is co-extensive with federal due process requirements, jurisdictional inquiries under state law and federal due process standards merge into one analysis. Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993). Under that analysis, the exercise of jurisdiction over a non-resident defendant will violate due process unless the defendant has established such "minimum contacts" with the forum state that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

The court's exercise of personal jurisdiction may be either general or specific.  General jurisdiction exists when the defendant maintains significant contacts with the forum state, even if the cause of action is unrelated to those contacts. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  Plaintiffs do not contend that the Court has general jurisdiction over Defendants.

Specific jurisdiction exists when the cause of action arises out of the defendant's contacts with the forum state, even if those contacts are isolated and sporadic.  Data Disc, 557 F.2d at 1287.  Courts in this circuit use a three-prong test to determine whether they may assert specific jurisdiction in a particular case: (1) the foreign defendant must purposefully direct its activities or consummate some transaction with the forum or a resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting business in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.  Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987).  Each of these conditions must be satisfied to assert jurisdiction.  Insurance Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

　　　　　1. Purposeful direction or availment

The first factor of the test for specific jurisdiction can be met by showing either purposeful availment or purposeful direction.  Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d

1124, 1128 (9th Cir. 2010).   The Magistrate Judge applied the
purposeful direction framework.   Plaintiffs object to this.

    The Ninth Circuit has explained that, although courts "often
use the phrase 'purposeful availment' in shorthand fashion," these
are two distinct concepts.   See Schwarzenegger v. Fred Martin
Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).   "A purposeful
availment analysis is most often used in suits sounding in
contract."   Id.   "A showing that a defendant purposefully availed
himself of the privilege of doing business in a forum state
typically consists of evidence of the defendant's actions in the
forum, such as executing or performing a contract there."   Id.
"By taking such actions, a defendant 'purposefully avails itself
of the privilege of conducting activities within the forum State,
thus invoking the benefits and protections of its laws.'"   Id.
(quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).   "A
purposeful direction analysis, on the other hand, is most often
used in suits sounding in tort."   Id.   "A showing that a defendant
purposefully directed his conduct toward a forum state, by
contrast, usually consists of evidence of the defendant's actions
outside the forum state that are directed at the forum, such as
the distribution in the forum state of goods originating
elsewhere."   Id. at 803 (citations omitted).   The Ninth Circuit
recently explained that, where, as here, "the underlying action is
copyright infringement, which is often characterized as a tort,"
purposeful direction is "the proper analytical framework."
Brayton Purcell, 606 F.3d at 1128.   Thus, the Magistrate Judge's
use of the purposeful direction framework was appropriate.

**United States District Court**
For the Northern District of California

The Ninth Circuit "evaluates purposeful direction using the three-part 'Calder-effects' test, taken from the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984)." Brayton Purcell, 606 F.3d at 1128. "Under this test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" Id.

### A. Intentional Act

The Magistrate Judge recommended finding that the first element of the Calder effects test is met here because Defendants acted intentionally in operating websites containing links to material that allegedly infringes Plaintiffs' copyrights. Docket No. 34, 7. Plaintiffs do not object to that recommendation, and the Court finds that it is correct.

### B. Express Aiming

"The second part of the Calder-effects test requires that the defendant's conduct be expressly aimed at the forum." Brayton Purcell, 606 F.3d at 1129. The Ninth Circuit "has emphasized that 'something more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction and that 'something more' means conduct expressly aimed at the forum." Id. (internal formatting, quotation marks and citations omitted). In the context of evaluating "whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed," the Ninth Circuit has identified several factors that it has considered to determine whether a nonresident defendant has done "something

more." Mavrix Photo, 647 F.3d at 1229 (citations omitted).
These factors include "the interactivity of the defendant's
website . . . ; the geographic scope of the defendant's commercial
ambitions . . . ; and whether the defendant 'individually
targeted' a plaintiff known to be a forum resident . . ." Id.
(citations omitted).

   In their response to the Magistrate Judge's order to show
cause, Plaintiffs argued that Defendants' actions were expressly
aimed at California "given the highly interactive, commercial
nature of Defendants' websites." Resp. to Order to Show Cause, 4.
They also contended that Defendants' websites and blogs were
hosted by companies located in California or whose parent
companies are located in California and that they used other
California companies, such as Twitter, Facebook and Youtube to
direct Internet users to their websites, as well as to host
infringing videos, artwork and links to unauthorized downloads.
Id. at 4-5. They further stated that Defendants "target[ted]
California residents indiscriminately" and that they "profited
from Internet traffic through advertising displayed on their
respective Accounts." Id. at 4. In their objection to the
Magistrate Judge's report and recommendation, Plaintiffs argue for
the first time that "the advertising on Defendants' website . . .
targeted California residents." Obj. at 5. They also argue that
Defendants targeted California by taking revenue away from Apple
iTunes, which was a legitimate provider of Plantiffs' material.
Id. at 6.

   The Ninth Circuit examined a similar situation in Mavrix
Photo. In that case, Mavrix Photo, a celebrity photo agency,

brought suit in California against Brand, an Ohio corporation, which operated a website that "covers popular personalities in the entertainment industry and features photo galleries, videos, and short articles." Mavrix Photo, 647 F.3d at 1221-22. The website at issue there had various interactive features: it allowed visitors to comment on articles, vote in polls, subscribe to an email newsletter, join a membership club and submit news tips and photos of celebrities. Id. at 1222. Although the website "court[ed] a national audience, not restricted to California," it had "some ties specific to California," including that it made "money from third-party advertisements for jobs, hotels, and vacations in California." Id. In concluding that Brand expressly aimed his conduct at California, the court stated that it found "most salient the fact that Brand used Mavrix's copyrighted photos as part of its exploitation of the California market for its own commercial gain." Id. at 1229. The court explained,

> Brand makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to Brand. A substantial number of hits to Brand's website came from California residents. One of the ways we know this is that some of the third-party advertisers on Brand's website had advertisements directed to Californians. In this context, it is immaterial whether the third-party advertisers or Brand targeted California residents. The fact that the advertisements targeted California residents indicates that Brand knows--either actually or constructively-- about its California user base, and that it exploits that base for commercial gain by selling space on its website for advertisements.

Id. at 1230. Further, although Brand did not market its website in California local media, he "operated a very popular website with a specific focus on the California-centered celebrity and

entertainment industries." Id. "Based on the website's subject matter, as well as the size and commercial value of the California market," the court concluded "that Brand anticipated, desired, and achieved a substantial California viewer base." Id. The court cautioned, "Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." Id. at 1231. It nevertheless held that, "where, as here, a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state." Id.

The Magistrate Judge acknowledged that the websites at issue here are highly interactive but found that Plaintiffs "have not shown that a California audience is an integral component of defendants' business model and profitability or that the economic value of defendants' websites depends in any way on their appeal to California residents." Report and Recommendation, 8-9. However, Plaintiffs have now cited evidence which shows that, as in Mavrix, many of the third party advertisements on Defendants' websites specifically targeted California residents. For example, one of Indrawati Yang's websites, koreanmusicdownload.blogspot.com, showed advertisements for Groupon Los Angeles and AAA of Southern California. Mot. for Default J., Ex. D, Docket No. 28-4, 14; Mot. for Default J., Ex. H, Docket No. 28-7, 133; see also Mot. for Default J., Ex. H, Docket No. 28-7, 35 (advertisement for livingsocial Los Angeles). In addition, Plaintiffs have provided evidence that the United States is their largest market for sales and that California

13

accounts for a large share of their business within the United States, in part because the music appeals to the large population of residents of Korean descent in the state.  Cho Decl. ¶ 2.  This is further supported by the fact that many of the websites have "hit counters" that show the number of visitors they have received, by country, and reveal that a substantial percentage of them were from the United States.  See, e.g., Mot. for Default J., Ex. H, Docket No. 28-7, 43 (showing that the top two countries from which users accessed the website were Korea, with 1,498 visitors, and the United States, with 1,269 visitors).  As in Mavrix, these facts show that Defendants had actual or constructive knowledge of their California users and that they exploited that user base for profit.

This evidence differentiates the present case from DFSB Kollective Co. v. Bourne, 2012 U.S. Dist. LEXIS 131079 (N.D. Cal.), in which the court adopted a magistrate judge's recommendation to deny a motion for default judgment based on lack of personal jurisdiction.  In that decision, the district judge found that the plaintiffs had not shown that the defendant actually or constructively knew about his California user base because they did not show that "a substantial number of hits to defendant's websites came from California" or "that defendant's websites displayed advertisements targeted to California residents," among other things.  Id.  Here, Plaintiffs have offered such evidence.

Accordingly, the Court concludes that Mavrix controls the outcome here and Plaintiffs have made a sufficient showing that Defendants "expressly aimed" their activities at California.

C. Harm

The third part of the Calder effects test requires that Defendants' conduct "caused harm that [they] knew was likely to be suffered in the forum." Brayton Purcell, 606 F.3d at 1131 (citing Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1206 (9th Cir. 2006). "In copyright cases this requirement is generally satisfied when the plaintiff resides in the forum state." DFSB Kollective Co. Ltd. v. Bourne, 2012 WL 2376209, at *8 (citing Brayton Purcell, 606 F.3d at 1131). "In appropriate circumstances [however,] a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business." Id. (quoting Dole Food Co. Inc. v. Watts, 303 F.3d 1104, 1113 (9th Cir. 2002)) (brackets in original).

The Magistrate Judge concluded that Plaintiffs made an insufficient showing that "the brunt of the harm caused by defendants' alleged infringement of plaintiffs' copyrights was felt in California." Report and Recommendation, 12 (emphasis in original). However, the Ninth Circuit has recognized "that the 'brunt' of the harm need not be suffered in the forum state." Yahoo! Inc., 433 F.3d at 1207. "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." Id.

Here, although Plaintiffs are not residents of California, they have offered evidence that Defendants likely knew that they would cause harm in this state. Plaintiffs allege that, by making Plaintiffs' material online for free, Defendants significantly

reduced the value of Plaintiffs' works and decreased the volume of
sales and corresponding revenue, including in California.  "The
economic loss caused by the intentional infringement of a
plaintiff's copyright is foreseeable." Mavrix, 647 F.3d at 1231.
Here, as in Mavrix, it was foreseeable that this economic loss
would occur in California, as well as in Korea, where Plaintiffs
are located.  As explained above, a sizeable portion of the value
of the music and cover art was based on potential sales in the
United States market and in California in particular.  That this
was reasonably foreseeable is demonstrated in part by the
California-targeted advertisements, the number of American users
of Defendants' websites and the evidence that the demand for
Korean music within California is higher than in other parts of
the United States.  Because Defendants caused Plaintiffs to lose
potential sales in California, a jurisdictionally significant
amount of Plaintiffs' harm was suffered within the state.

        2. Forum-Related Activities

    Under the second prong of the personal jurisdiction analysis,
which the Magistrate Judge did not reach, the Court considers that
"the plaintiff's claim must be one which arises out of or relates
to the defendant's forum-related activities." Menken v. Emm, 503
F.3d 1050, 1058 (9th Cir. 2007).  The Ninth Circuit "follows the
'but for' test to determine forum-related conduct." Fiore v.
Walden, 688 F.3d 558, 582 (9th Cir. 2012) (internal quotation
marks and citation omitted).

    Here, Defendants have created websites on which they place,
and link to, infringing content, and which are targeted to
California residents.  Plaintiffs would not have suffered injury

United States District Court
For the Northern District of California

but for Defendants' creation of these websites.  Thus, the forum-related conduct requirement for specific jurisdiction has been met.

### 3. Reasonableness of Exercise of Jurisdiction

Because Plaintiffs have met their burden to satisfy the first two prongs of the test for establishing personal jurisdiction, the burden shifts to Defendants "to satisfy the third part-- 'present[ing] a compelling case' that the exercise of jurisdiction would not be reasonable'" in California.  <u>Fiore</u>, 688 F.3d at 582 (citations omitted).  The Magistrate Judge did not reach this factor.  To determine the reasonableness of the exercise of jurisdiction, the Ninth Circuit balances seven factors: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendants of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiffs' interest in convenient and effective relief; and (7) the existence of an alternative forum.  <u>Id.</u> at 582-83 (citing <u>Menken</u>, 503 F.3d at 1058).

Because Defendants have not appeared or responded to the motion for default judgment, they have not met their burden to establish that the exercise of jurisdiction would be unreasonable. In addition, based on its own analysis of the factors, the Court concludes that the exercise of jurisdiction is not unreasonable.

First, because it is not clear exactly how many California users accessed Defendants' websites, the precise degree of

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   purposeful injection is unknown.  However, the evidence suggests

2   that there were a substantial number.  Thus, this factor weighs in

3   favor of exercising jurisdiction.

4       As to second factor, the "defendant's burden in litigating in

5   the forum is a factor in the assessment of reasonableness, but

6   unless the 'inconvenience is so great as to constitute a

7   deprivation of due process, it will not overcome clear

8   justifications for the exercise of jurisdiction.'"  <u>Panavision</u>

9   <u>Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1323 (9th Cir. 1998)

10  (citation omitted).  Here, the burden on Defendants, who live in

11  Vietnam and Indonesia, to litigate in California is significant.

12  However, the inconvenience is not so great as to deprive them of

13  due process, particularly given their purposeful availment of the

14  benefits of conducting business within the state.

15      The third factor "concerns the extent to which the exercise

16  of jurisdiction would conflict with the sovereignty of the

17  defendants' state."  <u>Core-Vent Corp. v. Nobel Indus. AB</u>, 11 F.3d

18  1482, 1489 (9th Cir. 1993).  "Litigation against an alien

19  defendant creates a higher jurisdictional barrier than litigation

20  against a citizen from a sister state because important

21  sovereignty concerns exist."  <u>Id.</u> (internal quotation marks,

22  formatting and citation omitted).  When determining how much

23  weight to accord to this factor, the Ninth Circuit has "focused on

24  the presence or absence of connections to the United States in

25  general, not just to the forum state."  <u>Id.</u>  "Sovereignty concerns

26  weigh more heavily when the defendants have no United States-based

27  relationships."  <u>Id.</u>  Here, Defendants have United States-based

28  relationships with the companies that host their websites and

content.  "Thus, sovereignty considerations weigh less heavily than if no United States-based relationships were established." Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1200 (9th Cir. 1988).

Fourth, California has an interest in adjudicating this dispute.  Plaintiffs have alleged that Defendants target California residents, among others, to download infringing content and to provide profit to Defendants based on their viewing of advertisements.  This factor favors the exercise of jurisdiction.

The fifth factor, the efficient resolution of the litigation, "focuses on the location of the evidence and witnesses." Panavision, 141 F.3d at 1323 (citation omitted).  "It is no longer weighed heavily given the modern advances in communication and transportation."  Id.  Here, although the parties are located outside of California, much of the evidence and witnesses, including the companies who host Defendants' websites, are within California.  Accordingly, this factor is neutral or favors the exercise of jurisdiction.

As to the sixth factor, "evaluating the convenience and effectiveness of relief for the plaintiff," courts "have given little weight to the plaintiff's inconvenience."  Id. at 1324. Plaintiffs are not residents of this forum and, thus, the inconvenience that they may suffer from litigating elsewhere is neutral.

Finally, Defendants have not come forward to offer any alternative forum in which this case could proceed.  It is not clear whether Plaintiffs would be able to bring their claims asserting infringement of copyrights registered in the United

States in Korea, Vietnam or Indonesia or in any other district within the United States.  Because there is no apparent alternative forum, this factor weighs in favor of the exercise of jurisdiction here.

Based on a balancing of these factors, the exercise of jurisdiction over Defendants is reasonable.

C. Service of Process

"Before considering the merits of a motion for default judgment, the Court must first 'assess the adequacy of the service of process on the party against whom default is requested.'" U.A. Local No. 467 Pension Trust Fund v. Hydra Ventures Inc., 2013 U.S. Dist. LEXIS 34931, at *13 (N.D. Cal.) (citation omitted).

Plaintiffs, with Court approval, served Defendants by email. See Docket Nos. 21, 23, 24.  Federal Rule of Civil Procedure 4(f) provides, in pertinent part, "Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed . . . may be effected in a place not within any judicial district of the United States: . . . (3) by other means not prohibited by international agreement as may be directed by the court."  In approving service upon an international defendant by e mail, the Ninth Circuit has stated that "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' . . . It is merely one means among several which enables service of process on an international defendant." Rio Props. v. Rio Int'l Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002) (internal citations omitted).  "As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement.  No other limitations are

20

evident from the text." Id. at 1014.  However, to comport with

the Constitution, "the method selected [must] be reasonably

calculated to provide notice and an opportunity to respond" when

considered under the circumstances of the case.  Id. at 1017-18.

Neither Indonesia nor Vietnam are parties to the Hague

Convention and there are no treaties between these countries and

the United States regarding service of documents.  Thus, there are

no international agreements prohibiting service by e-mail.

Further, Defendants structured their businesses such that

they can be contacted only via their email addresses.  When

registering their websites with their internet service providers,

they provided email addresses but no valid street addresses.  It

was through those email addresses that Defendants conducted the

business alleged to be infringing here.  Thus, service upon

Defendants using their email addresses was not only reasonably

calculated to give them notice of the pendency of this action, but

was also, as in Rio Properties, the method of service most likely

actually to reach Defendants.

Accordingly, service of process upon Defendants was proper.

II.  Venue

Title 28 U.S.C. § 1400(a) provides that copyright actions

"may be instituted in the district in which the defendant or his

agent resides or may be found."  The Ninth Circuit has interpreted

this code section to mean that venue "is proper in any judicial

district in which the defendant would be amenable to personal

jurisdiction if the district were a separate state." Columbia

Pictures Television v. Krypton Broad. of Birmingham, Inc., 106

F.3d 284, 289 (9th Cir. 1997), overruled on other grounds.

United States District Court
For the Northern District of California

The Magistrate Judge concluded that venue was inappropriate in this district because "defendants are not amenable to personal jurisdiction in California." Report and Recommendation, 13. Because this Court has held to the contrary regarding personal jurisdiction, it also concludes that venue is appropriate in this district.

III. Merits of the Motion for Default Judgment

Factors that the Court may consider when exercising its discretion regarding the entry of default judgment include:

> (1) the possibility of prejudice to the plaintiff,
> (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir. 1987) (quoting Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977)). In addition to the allegations in their pleading, Plaintiffs have also submitted evidence of Defendants' infringing websites and Plaintiffs' investigations into their activities, which the Court will also consider in evaluating this motion.

A. Sufficiency of the Complaint and Merits of Plaintiffs' Claims

The second and third Eitel factors, the merits of the Plaintiffs' substantive claim and the sufficiency of the complaint, favor default judgment. "These two factors together

United States District Court
For the Northern District of California

require plaintiffs' allegations to state a claim on which the plaintiff may recover." U.A. Local No. 467 Pension Trust Fund, 2013 U.S. Dist. LEXIS 34931, at *13 (internal quotation marks, formatting and citation omitted); see also Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978) ("The issue here is whether the allegations in the complaint are sufficient to state a claim on which the [moving party] may recover.").

In their first cause of action, Plaintiffs allege that Defendants infringed their copyrights in violation of 17 U.S.C. § 501.  "Plaintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106."  Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1159 (9th Cir. 2007) (internal quotation marks and citation omitted). These rights include to do and to authorize a number of acts regarding the copyrighted works, including to reproduce and distribute copies.  17 U.S.C. § 106.

Plaintiffs allege that they own the copyrights for more than two hundred songs on fifteen different albums and their associated artwork.  1AC ¶ 16 & Ex. A.  They have submitted the registration certificates for all fifteen albums.  Cho Decl. ¶ 4, Ex. E, Docket No. 28-5.  They have also alleged that Defendants have created unauthorized copies of these copyrighted works and have uploaded those to third party websites for distribution.  1AC ¶¶ 25, 27. They have submitted declarations attesting that Bing Yang did this with sixty-three works and Indrawati Yang with one hundred and

United States District Court
For the Northern District of California

23

eighty works.  Cho Decl. ¶¶ 5-10.  These allegations and evidence
are sufficient to establish a claim for direct copyright
infringement.

In their second cause of action, Plaintiffs charge Defendants
with contributory copyright infringement.  "One who, with
knowledge of the infringing activity, induces, causes or
materially contributes to the infringing conduct of another may be
liable as a 'contributory' copyright infringer."  Ellison v.
Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004) (internal quotation
marks, citation and formatting omitted).  This includes "both
those with actual knowledge and who have reason to know of direct
infringement."  Id.

Plaintiffs have alleged that third party websites host and
distribute the infringing content, in violation of 17 U.S.C.
§ 501, and that Defendants materially contributed to this conduct
by uploading the works to those sites and indexing them and
providing links to them from Defendants' own websites.  1AC ¶¶ 24,
26-27, 39.  Plaintiffs also allege that Defendants know that the
files are infringing because they have received notices from
Plaintiffs and the third-party sites advising them of this fact.
Id. at ¶ 40.  Accordingly, Plaintiffs have sufficiently alleged
claims against Defendants for contributory copyright infringement.

In Plaintiffs' third cause of action, they charge Defendants
with inducing copyright infringement.  Under the Supreme Court's
decision in Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
545 U.S. 913 (2005), inducement of copyright infringement appears
to be a particular type of contributory liability, rather than a
separate cause of action.  See id. at 930 ("One infringes

**United States District Court**
For the Northern District of California

contributorily by intentionally inducing or encouraging direct
infringement."); id. at 942 (Ginsburg, J., concurring) ("Liability
under our jurisprudence may be predicated on actively encouraging
(or inducing) infringement through specific acts (as the Court's
opinion develops) or on distributing a product distributees use to
infringe copyrights, if the product is not capable of
'substantial' or 'commercially significant' noninfringing uses.");
see also Columbia Pictures Indus. v. Gayr Fu Ng, 2013 U.S. App.
LEXIS 5597, at *2, 19-20, 23-48 (affirming the trial court's
finding of contributory infringement under an inducement theory of
liability); IO Group, Inc. v. Jordon, 708 F. Supp. 2d 989, 999
(N.D. Cal. 2010) (declining to find that inducement of
infringement is a cause of action separate from contributory
infringement).  Because Plaintiffs do not appear to seek
additional damages or relief under this cause of action, other
than what they also seek under their other causes of action, the
Court need not reach this issue.  See DFSB Kollective Co., Ltd. v.
Tran, 2011 U.S. Dist. LEXIS 147538, at *22 (N.D. Cal.).

Because Plaintiffs have sufficiently plead copyright
infringement and contributory infringement, the Court finds that
these factors favor entry of default judgment.

B. The Remaining Eitel Factors

The balance of the remaining factors also favors entry of
default judgment.

As to the first factor, Plaintiffs will be prejudiced if the
motion for default judgment is denied because they will likely be
left without any way to obtain a remedy.

Regarding the fourth <u>Eitel</u> factor, the sum of money at stake, Plaintiff seeks a significant amount of money, $315,000.00 in statutory damages against Bing Yang, and $900,000.00 in statutory damages against Indrawati Yang. However, in light of Defendants' infringing conduct and their refusal to participate in this litigation, monetary damages are appropriate. <u>IO Group</u>, 708 F. Supp. 2d at 999. Further, the damages sought here are statutory and the amount left to the Court's discretion. <u>DFSB Kollective Co., Ltd. v. Tran</u>, 2011 U.S. Dist. LEXIS 147538, at *23.

Nothing in the record suggests a "possibility of a dispute concerning material facts," the fifth <u>Eitel</u> factor. <u>See</u> <u>U.A. Local No. 467 Pension Trust Fund</u>, 2013 U.S. Dist. LEXIS 34931, at *13 (finding nothing to suggest the possibility of a dispute of material fact where "Defendant has not filed an answer to the complaint or any other responsive pleading in this matter"). Further, Plaintiffs have offered documentary evidence that makes it unlikely that such a dispute would arise.

The sixth <u>Eitel</u> factor requires the Court to consider whether Defendants' default was due to excusable neglect. As explained above, Defendants were served with process at the email addresses from which they conduct their business. Further, Plaintiffs have offered proof that they served Defendants with the request for entry of default and motion for default judgment at these email addresses as well. Defendants thus had notice and sufficient opportunity to appear and litigate this case.

Finally, as to the seventh <u>Eitel</u> factor, although cases "should be decided on their merits whenever reasonably possible," <u>Eitel</u>, 782 F.2d at 1472, "Rule 55(b) allows entry of default

judgment in situations such as this, where the defendant has refused to litigate," <u>Bd. of Trs. v. RBS Wash. Blvd, LLC</u>, 2010 U.S. Dist. LEXIS 1693, at *9-10 (N.D. Cal.). Because Defendants have not responded to the complaint or participated in the proceedings, a decision on the merits is not possible. Accordingly, this factor does not weigh against default judgment.

IV.   Relief

In their motion for default judgment, Plaintiffs seek entry of a permanent injunction against both Bing Yang and Indrawati Yang prohibiting them from further infringing any of Plaintiffs' copyrights. They also request an award of $315,000 in statutory damages against Bing Yang and $900,000 in statutory damages against Indrawati Yang. Finally, they seek post-judgment interest pursuant to 28 U.S.C. § 1961.

A. Injunctive Relief

The Copyright Act, 17 U.S.C. § 502(a), authorizes courts to issue permanent injunctions on reasonable terms to prevent future infringement of a copyright. "A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." <u>eBay Inc. v. MercExchange, LLC</u>, 547 U.S. 388, 391 (2006). The plaintiff

> must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

<u>Id.</u>

Here, each of these four factors favors entering a permanent injunction. Plaintiffs have shown that they will suffer

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

irreparable injury in the absence of an injunction and that
monetary damages are not adequate to compensate for this.  They
have offered evidence that Bing Yang and Indrawati Yang are "two
of the biggest illegal uploaders (and free download link
providers) of Korean music in the world."  Cho Decl. ¶ 11.  They
have also provided evidence that, "for every legitimate digital
download sale" of their music, about "19 downloads are lost to
piracy."  Id.  "This type of infringing conduct exposes Plaintiffs
to 'massive, repeated, and worldwide infringement' of their
copyrighted sound recordings."  DFSB Kollective Co., Ltd. v. Tran,
2011 U.S. Dist. LEXIS 147538, at *25 (citing Twentieth Century Fox
Film Corp. v. Streeter, 438 F. Supp. 2d 1065, 1073 n.2 (D. Ariz.
2006) ("When digital works are distributed via the internet, as in
this case, every downloader who receives one of the copyrighted
works from Defendant is in turn capable of also transmitting
perfect copies of the works. Accordingly, the process is
potentially exponential rather than linear, threatening virtually
unstoppable infringement of the copyright.")).  The third factor,
which addresses the balance of hardships between Plaintiffs and
Defendants, also favors entry of a permanent injunction.  Here,
without entry of the injunction, Plaintiffs face further harm from
ongoing infringement of their copyrights, while the injunction
would simply require Defendants to comply with the Copyright Act.
Id. at *26.  Finally, the public interest would be served by entry
of the injunction.  See Taylor Corp. v. Four Seasons Greetings,
LLC, 315 F.3d 1039, 1042 (8th Cir. 2003) ("The public interest is
served in protecting the holders of valid copyrights from
infringing activity.").

**United States District Court**
For the Northern District of California

B. Monetary Damages

Plaintiffs seek statutory damages in the amount of $5,000 per copyright infringed, for a total of $315,000 for Bing Yang's infringement of at least sixty-three of their copyrights and $900,000 for Indrawati Yang's infringement of at least one hundred and eighty of their copyrights.

The Copyright Act authorizes statutory damages for infringement of each work "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

"Under the Copyright Act, the court has wide discretion in calculating statutory damages, 'constrained only by the specified maxima and minima.'" Chanel, Inc. v. Doan, 2007 U.S. Dist. LEXIS 22691, at *12-13 (N.D. Cal.) (quoting Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984)). "Determination of statutory damages within the applicable limits may turn upon such factors as the expenses saved and profits reaped by the defendants in connection with the infringement, the revenues lost by the plaintiff as a result of the defendant's conduct, and the infringer's state of mind--whether willful, knowing, or merely innocent." Lamb v. Starks, 1997 U.S. Dist. LEXIS 11369, at *6 (N.D. Cal.) (citing N.A.A.S. Import Corp. v. Chenson Enters. Inc., 968 F.2d 250, 252 (2d Cir. 1992); Nimmer on Copyright, § 1404(b)(1)(a)) (internal quotation marks omitted). "It is

clear, however, that a plaintiff may recover statutory damages

whether or not there is adequate evidence of the actual damages

suffered by the plaintiff or of the profits reaped by defendant."

Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1337 (9th

Cir. 1990) (internal quotation marks and citation omitted).

Further, "[t]he Supreme Court has stated that 'even for

uninjurious and unprofitable invasions of copyright the court may,

if it deems it just, impose a liability within [the] statutory

limits to sanction and vindicate the statutory policy' of

discouraging infringement."   Id. (quoting F.W. Woolworth Co. v.

Contemporary Arts, Inc., 344 U.S. 228, 233 (1952)).

On the evidence offered here, an award of $5,000 for each

violation is reasonable.  Plaintiffs have offered evidence that

each Defendant has created an extensive number of websites and

accounts to distribute Korean pop music illegally over the

internet and that they have denied Plaintiffs significant revenue

that they would have achieved from the legitimate sales of this

music.  Further, Defendants profit from their misconduct through

the sales of advertisements on their websites.  Plaintiffs also

offer evidence that Defendants' infringement has been willful.

For example, Plaintiffs have shown that they have previously

attempted to address Defendants' infringement by sending them

notices through their third-party service providers or having

these providers shut down the accounts, and that this did not

deter Defendants, who simply opened new accounts or transferred to

their old accounts to new providers.

**United States District Court**
For the Northern District of California

1    Thus, the Court concludes that an award of $5,000 for each

2  act of infringement is reasonable.  The Court awards Plaintiffs

3  $315,000 against Bing Yang and $900,000 against Indrawati Yang.

4    C. Post-Judgment Interest

5    "Interest shall be allowed on any money judgment in a civil

6  case recovered in a district court."  28 U.S.C. § 1961(a).  Thus,

7  Plaintiffs are awarded such interest, which "shall be calculated

8  from the date of the entry of the judgment, at a rate equal to the

9  weekly average 1-year constant maturity Treasury yield, as

10  published by the Board of Governors of the Federal Reserve System,

11  for the calendar week preceding the date of the judgment."  Id.

12                          CONCLUSION

13    For the reasons set forth above, the Court declines to adopt

14  the Magistrate Judge's Report and Recommendation (Docket No. 34)

15  and GRANTS Plaintiffs' motion for default judgment (Docket No.

16  28).  A permanent injunction shall be entered separately.

17    The Clerk shall enter default judgment for $315,000 against

18  Bing Yang, $900,000 against Indrawati Yang and post-judgment

19  interest on these amounts and close the file.  Plaintiffs shall

20  recover their costs from Defendants.

21    IT IS SO ORDERED.

22

23  Dated:  3/28/2013

     CLAUDIA WILKEN
     United States District Judge

24

25

26

27

28